UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| GRAND RIVER ENTERPRISES | : | |
|---|---|---|
| SIX NATIONS LTD, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:16-cv-01087-WWE |
| | : | |
| KEVIN B. SULLIVAN, | : | |
| Commissioner of Revenue Services of the | : | |
| State of Connecticut, | : | |
|     Defendant. | : | |

# **MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff Grand River Enterprises Six Nations LTD alleges that defendant Kevin B. Sullivan, as Commissioner of Revenue Services, threatens to revoke plaintiff's license to have its tobacco products sold in Connecticut based upon plaintiff's inability to reconcile nationwide sales with federal interstate shipping reports. Plaintiff asserts that removal from the State's Tobacco Directory under these circumstances would violate its constitutional right to due process, as well as the Supremacy Clause and the Commerce Clause of the United States Constitution.

Defendant has moved to dismiss plaintiff's second amended complaint in its entirety. For the following reasons, defendant's motion will be granted.

## **BACKGROUND**

The following background is taken from plaintiff's second amended complaint, which is accepted as true for purposes of this decision.

Plaintiff's claims focus principally on recent amendments to Conn. Gen. Stat. § 4-28m(a)(3). The amendments first took effect with respect to plaintiff's Connecticut state regulatory filings that were submitted on April 30, 2016. The amendments purport to

1

authorize revocation of plaintiff's right and license to have its tobacco products sold in Connecticut if plaintiff's regulatory filings cannot reconcile the number of products sold nationwide by importers of its products (as measured by the importer's national federal excise tax returns) with the number of products shipped by these importers throughout the United States in Interstate Commerce (as evidenced by federal shipping reports required under federal law). The amendments thus purport to permit revocation of plaintiff's license in Connecticut based on the ability to reconcile two sets of federal regulatory filings of independent, third parties (importers), under two separate federal laws that federal law itself does not require to be reconciled.

The federal tax laws measure the volume of cigarettes entered into U.S. commerce nationwide, while the federal shipping laws require reporting of tobacco products shipped or sold nationwide in "Interstate Commerce," which does not include products shipped intrastate or within or among Indian Country (as that term is defined under federal law) after importation into the United States. The federal shipping law at issue requires that Connecticut receive certain reports each month for sales and shipments into Connecticut, and Connecticut may use the information contained in such reports only for the purpose of enforcing that federal law. The information received must be kept confidential according to the federal law's confidentiality requirements.

Without prejudice to its rights and in accordance with the amendments, plaintiff has provided defendant with federal tax returns and federal shipping reports filed by those importers in 2015 and 2016 that operated outside of Native American land (as requested by defendant); however, the numbers of cigarettes reported in each set of reports cannot be reconciled with the total number of cigarettes imported into the U.S., because three importers do not file shipping reports (as they distribute plaintiff's products solely within

2

Indian Country); and a number of plaintiff's products after entering U.S. commerce are sold and shipped exclusively intrastate (for which no federal shipping report is required) or are held in inventory that carries over from prior years or is carried over until the next calendar year.

Plaintiff alleges that defendant's threat of revocation of plaintiff's license under these circumstances violates its right to substantive due process, the Commerce Clause, and the Supremacy Clause of the United States Constitution, as well as the Connecticut Constitution equivalent.

## DISCUSSION

At the outset, defendant argues that plaintiff lacks standing because it has alleged no concrete injury. Citing to paragraphs 9 and 32 of its second amended complaint, plaintiff responds that it has pleaded factual allegations of particularized injury in the form of substantial costs expended in complying with the Commissioner's demands, which are allegedly based on unconstitutional interpretation of § 4-28m(a)(3)(C). Although the second amended complaint does allege that plaintiff "has expended over $300,000 in seeking and obtaining approval to be listed on the Tobacco Directory," it does not specifically attribute any portion of that cost to compliance with the statutory provision at issue, Conn. Gen. Stat. § 4-28m(a)(3)(C). Plaintiff maintains that a "fair reading" of the second amended complaint should presume that plaintiff's alleged economic injuries are fairly traceable to complying with § 4-28m(a)(3)(C). Assuming that plaintiff has adequately alleged standing, or that it could amend its complaint to do so, the second amended complaint will nevertheless be dismissed for the reasons that follow.

3

**Due Process**

Defendant argues that plaintiff's due process claim should fail because plaintiff has no protected property or liberty interest in being listed on the State's Tobacco Directory. Moreover, defendant contends that plaintiff can seek review of any future denial in both state administrative and judicial fora. Finally, defendant submits that, regardless of plaintiff's property interest in a license or its available remedies upon a denial, § 4-28m(a)(3)(C) satisfies the rational basis standard of review.

Plaintiff responds that it has a due process interest in its license to sell tobacco based upon the issuing authority's lack of discretion to deny the benefit. See Mordukhaev v. Daus, Fed. Appx. 16, 18 (2d Cir. 2012) ("[T]he existence of an entitlement turns on whether the issuing authority lacks discretion to deny [the benefit], *i.e.,* is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met."). Plaintiff asserts that the entire process is unconstitutional, regardless of state administrative and judicial remedy. Plaintiff argues that regardless of the State's proffered motives for § 4-28m(a)(3)(C), the statute is an irrational and arbitrary means of achieving these interests because the inability to reconcile the numbers in question is a result of federal law and has no bearing on whether the manufacturer's cigarettes were diverted to the illicit market.

Defendant submits that there is a rational relationship between § 4-28m(a)(3)(C) and a legitimate legislative purpose: Lawmakers sought to grant state certification only to those manufacturers that can effectively track their cigarette sales, and can demonstrate, through diligent recordkeeping, that the vast majority of their cigarettes are being sold to distributors or retailers that comply with applicable federal and state reporting and taxation requirements.

> By requiring nonparticipating manufacturers to demonstrate that they can track virtually all of their cigarettes from the point of manufacture or importation to the point of retail sale, Connecticut hopes to reduce state tax

4

evasion; increase compliance with the State's escrow statute, Conn. Gen. Stat. § 4-28i; and protect Connecticut residents from the many adverse public health effects, such as smoking initiation by minors, that are likely to occur wherever illegal, artificially underpriced, cigarettes are available.

Pl.'s Mem. 14 [ECF No. 82, Ex. 1].

Accepting that these are legitimate state interests, plaintiff attacks defendant's reconciliation requirement as a means of supporting them.

Section 4-28m(a)(3) provides in relevant part:

(3) The commissioner shall not include or retain in the directory any brand family of a nonparticipating manufacturer if the commissioner concludes … (C) a nonparticipating manufacturer's total nation-wide reported sales of cigarettes on which federal excise tax is paid exceeds the sum of (i) its total interstate sales, as reported under 15 USC 375 et seq. [PACT Act] , as from time to time amended, or those made by its importer, and (ii) its total intrastate sales, by more than two and one-half per cent of its total nation-wide sales during any calendar year, unless the nonparticipating manufacturer cures or satisfactorily explains the discrepancy not later than ten days after receiving notice of the discrepancy.

Plaintiff submits that the PACT Act exempts intrastate shipments and shipments within Indian Country from its reach, so plaintiff cannot reconcile the number of cigarettes reported on its importers' excise tax forms with the number reported on their PACT Act forms as required by § 4-28m(a)(3)(C). But plaintiff all but ignores the provision allowing manufacturers to explain such a discrepancy to the commissioner. Indeed, plaintiff labels the § 4-28m(a)(3)(C)'s requirement as impossible, yet plaintiff has been repeatedly certified to the Tobacco Directory based upon defendant's exercise of discretion in accepting plaintiff's explanations.

Section 4-28m(a)(3)(C)'s reconciliation requirement is not irrational merely because plaintiff has a satisfactory explanation for its disparity. Some manufacturers may lack a good explanation; for others, reconciliation *is* possible, as would be the case in the absence of intrastate or Indian Country shipments (presuming no other nefarious activity). Given the

5

deferential standard, § 4-28m(a)(3)(C) can be viewed as rational means to reduce tax evasion; increase compliance with the escrow statute, and protect Connecticut residents from the many adverse public health effects of tobacco.

> Thus, it may be seen that today it is very difficult to overcome the strong presumption of rationality that attaches to a statute. We will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish, *Seagram & Sons, Inc. v. Hostetter,* 384 U.S. 35, 50, 86 S.Ct. 1254, 1263, 16 L.Ed.2d 336 (1966), because the problem could have been better addressed in some other way, *Mourning,* 411 U.S. at 378, 93 S.Ct. at 1665 or because the statute's classifications lack razor-sharp precision, *Dandridge,* 397 U.S. at 485, 90 S.Ct. at 1161. Nor will a statute be overturned on the basis that no empirical evidence supports the assumptions underlying the legislative choice. *Vance,* 440 U.S. at 110–11, 99 S.Ct. at 949–50. To succeed on a claim such as this, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Id.* at 111, 99 S.Ct. at 949.

Beatie v. City of New York, 123 F.3d 707, 712 (2d Cir. 1997). Plaintiff's complaint fails plausibly to allege that § 4-28m(a)(3)(C) cannot satisfy the rational basis standard of review. See Alliance of Auto. Mfrs., Inc. v. Currey, 610 Fed. Appx. 10, 14 (2d Cir. 2015). Accordingly, plaintiff's due process claim will be dismissed.

**Supremacy Clause**

Defendant argues that Congress intended to support rather than displace state or local laws that regulate and control the sale of cigarettes. The Supreme Court has instructed courts to presume that federal statutes do not preempt state law. See Bond v. U.S., 134 S.Ct. 2077, 2088-89 (2014) ("[I]t is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides the usual constitutional balance of federal and state powers.").

Plaintiff responds that the Supremacy Clause restricts the power of states to adopt policies that conflict with federal laws. When a federal statute does not contain an express preemption provision, state law nevertheless must yield to federal law if Congress has

6

evinced an intent that federal law is to occupy the field, or if there is an actual conflict between state and federal law. See Altria Group, Inc. v. Good, 555 U.S. 70, 76-77 (2008). Plaintiff submits that the reconciliation requirement of § 4-28m(a)(3)(C) is preempted by the PACT Act because it is impossible for plaintiff to comply with both statutes.

> As discussed previously, § 4-28m(a)(3)(C) purports to require cigarette manufacturers to reconcile within two and one-half percent of cigarettes reported for federal excise tax purposes with the number reported, in effect, under the PACT Act. The PACT Act, on the other hand, makes this reconciliation impossible in certain circumstances because certain sales and shipments of cigarettes are exempt from the reporting requirements.

Pl.'s Resp. 27 [ECF No. 86].

The Court is not persuaded that § 4-28m(a)(3)(C) and the PACT Act are in conflict. Defendant points out that plaintiff has continuously complied with the challenged statute for the past two years, as have the other three similarly situated manufacturers that are listed on the Connecticut Tobacco Directory. Moreover, the parties agree that plaintiff is in compliance with the PACT Act, so plaintiff's compliance with § 4-28m(a)(3)(C) has not somehow forced it to violate federal regulations. Plaintiff is listed on the Directory in part due to its compliance with both statutes, so the argument that dual compliance is impossible is unavailing. Plaintiff's Supremacy Clause claim, based on alleged conflict between federal and state law, will be dismissed.

**Commerce Clause**

Defendant argues that plaintiff's allegations are inadequate to state a plausible Commerce Clause violation.

> The Supreme Court has recognized that "there is a residuum of power in the state to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it." *Kassel v. Consol. Freightways Corp. of Del.,* 450 U.S. 662, 669, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981) (internal quotation marks omitted). Accordingly, "[t]he Commerce Clause does not ... invalidate all State restrictions on commerce." *Id.* A state statute or regulation may violate the dormant

7

> Commerce Clause only if it (1) "clearly discriminates against interstate commerce in favor of intrastate commerce," (2) "imposes a burden on interstate commerce incommensurate with the local benefits secured," or (3) "has the practical effect of 'extraterritorial' control of commerce occurring entirely outside the boundaries of the state in question." *Freedom Holdings Inc. v. Spitzer,* 357 F.3d 205, 216 (2d Cir.2004).

Selevan v. New York Thruway Authority, 584 F.3d 82, 90 (2d Cir. 2009).

Defendant contends that plaintiff has failed to alleged that the operation of § 4-28m(a)(3)(C) leads to any of the three possible kinds of prohibited consequences outlined above. Moreover, the dormant Commerce Clause's limitation on state power is not absolute. See Lewis v. BT Investment Mgrs., Inc., 447 U.S. 27, 36 (1980) ("In the absence of conflicting federal legislation the States retain authority under their general police powers to regulate matters of legitimate local concern, even though interstate commerce may be affected.").

Plaintiff responds that the practical effect of § 4-28m(a)(3)(C) is to control conduct beyond the boundaries of the State, in violation of the third prong of the dormant Commerce Clause. See VIZIO, Inc. v. Klee, 886 F.3d 249, 255 (2d Cir. 2018) ("A state law has unconstitutional extraterritorial effect if its practical effect ... is to control conduct beyond the boundaries of the State."). In an attempt to characterize § 4-28m(a)(3)(C) as directing plaintiff's conduct, plaintiff contends that, as a condition to having its products sold in Connecticut, it must either refrain from selling its products to parties that conduct business exclusively within the boundaries of another state or require such out of state importers to submit to the Commissioner's regulatory authority. But as VIZIO demonstrates, mere consideration of out-of-state or nationwide activity does not violate the extraterritoriality doctrine. Id. at 255-57. Indeed, the statute at issue in VIZIO not only required consideration of out-of-state commerce but also imposed in-state charges based on

8

that conduct. Nevertheless, the Second Circuit found VIZIO's extraterritoriality arguments unavailing:

> VIZIO argues that the state's fee structure is pegged to VIZIO's national activities, which will inevitably affect its television prices outside Connecticut. VIZIO attempts to characterize this as control, arguing that Connecticut's E–Waste Law, "individually and collectively with other states' e-waste laws, is establishing a piecemeal pricing mechanism for interstate goods." But this practical effect amounts to no more than "upstream pricing impact" because the law does not go "a step further [ and] control[ ] in-state and out-of-state pricing ...." *Spitzer*, 357 F.3d at 221. As such, Connecticut's E–Waste Law is merely one of "innumerable valid state laws affect[ing] pricing decisions in other States." *Healy*, 491 U.S. at 345, 109 S.Ct. 2491 (Scalia, J., concurring in part and concurring in the judgment) (cautioning against allowing Commerce Clause jurisprudence to "degenerate into disputes over degree of economic effect."). VIZIO has not alleged that Connecticut reaches out and directs VIZIO's decision-making apparatus or that of any other interstate commercial participant.

Id. at 256.

Here, defendant highlights that § 4-28m(a)(3)(C) is merely a reporting requirement pertaining to sales transactions that have already occurred; it has no substantive impact whatsoever on those transactions themselves, so the Commissioner cannot be said to have directed plaintiff's out-of-state conduct. See SPGGC, LLC v. Blumenthal, 505 F.3d 183, 193 (2d Cir. 2007) ("A state law may burden interstate commerce when it has the practical effect of requiring out-of-state commerce to be conducted at the regulating state's direction."). Accordingly, plaintiff's Commerce Clause claim will be dismissed.

**Declaration of Compliance**

For its fourth and final claim, plaintiff seeks a declaration that it has complied with § 4-28m(a)(3)(C). Plaintiff submits that it has provided the commissioner with a detailed and satisfactory explanation of the reasons why the number of cigarettes for which federal excise tax was paid cannot be reconciled for purposes of § 4-28m(a)(3)(C) with the number of cigarettes for which the PACT Act reports were filed within the applicable margin.

Defendant argues that this claim should be dismissed, as plaintiff has already received from defendant confirmation of its compliance with § 4-28m(a)(3)(C) for the 2016-17 certification year and the 2017-18 certification year. Plaintiff responds that confirmation of compliance does not render its claim for declaratory judgment moot because the offensive conduct is capable of repetition yet evading review. See Murphy v. Hunt, 455 U.S. 478, 482-83 (1982). Plaintiff's argument is not persuasive in the instant circumstances. While defendant's conduct is capable of repetition, in light of this decision, it has not evaded review. Moreover, if defendant were to revoke plaintiff's license based on future noncompliance with § 4-28m(a)(3)(C), plaintiff could challenge the revocation at that time. Accordingly, plaintiff's claim for declaration of compliance with be dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED. The Clerk is instructed to close this case.

Dated this 26th day of September, 2018, at Bridgeport, Connecticut.

    /s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE