UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GRAND RIVER ENTERPRISES SIX
NATIONS, LTD.,
    *Plaintiff*,

v.

JOHN BIELLO, Acting Commissioner,
 Connecticut Department of Revenue Services,
    *Defendant*.

No. 3:16-cv-01087 (JAM)

**RULING DENYING MOTION FOR RECONSIDERATION**

Plaintiff Grand River Enterprises Six Nations, Ltd. ("GRE") has filed this lawsuit against the defendant Commissioner of the Connecticut Department of Revenue Services ("the Commissioner") to challenge a Connecticut statute that regulates the sale of cigarettes.[1] In order to deter "black market" cigarette sales, the Connecticut statute—Conn. Gen. Stat. § 4-28m(a)(3)(C)—requires the reporting of nationwide sales and shipping information by certain kinds of cigarette manufacturers including GRE.

GRE alleges that the Connecticut statute violates the Due Process Clause, the Commerce Clause, and the Supremacy Clause. Judge Eginton granted the Commissioner's motion to dismiss the complaint. *See Grand River Enterprises Six Nations Ltd. v. Sullivan*, 2018 WL 4623024 (D. Conn. 2018). GRE has filed a motion for reconsideration, and the case was later transferred to me. For the reasons set forth below, I will deny GRE's motion for reconsideration.

---

[1] The case was originally captioned "Kevin B. Sullivan, Commissioner of Revenue Services of the State of Connecticut." Since the filing of the case, John Biello has been appointed the Acting Commissioner of Revenue Services of the State of Connecticut, and he is substituted as the defendant pursuant to Fed. R. Civ. P. 25(d).

1

## BACKGROUND

The Commissioner of the Department of Revenue Services maintains a "Tobacco Directory" of manufacturers who are authorized to sell their brands of cigarettes in Connecticut. *See* Conn. Gen. Stat. § 4-28m. The eligibility requirements for the Tobacco Directory depend in large part on whether a particular cigarette manufacturer has opted to comply with the terms of a nationwide Master Settlement Agreement ("MSA"), an omnibus settlement into which most States and the leading cigarette manufacturers entered in 1998. The MSA resolved legal claims by the States against cigarette manufacturers for the public health costs of smoking-related illnesses. A major part of the MSA was to require cigarette manufacturers who chose to participate in the MSA (so-called "participating manufacturers") to make regular payments into a settlement fund on the basis of their volume of cigarette sales. *See S&M Brands, Inc. v. Georgia ex rel. Carr*, 925 F.3d 1198, 1201 (11th Cir. 2019).

Not all cigarette manufacturers have chosen to participate in the MSA, and GRE is one of the so-called "nonparticipating manufacturers." As a nonparticipating manufacturer, GRE is subject to separate statutory requirements to make payments into Connecticut's escrow fund based on the number of cigarettes sold in-state, which serve as security for any future smoking-related damages claims. *See* Conn. Gen. Stat. § 4-28i, § 4-28*l* (describing state escrow requirements and annual certification requirements applicable to "participating" and "nonparticipating" manufacturers); *see also Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 162-64 (2d Cir. 2005) (describing operation of the MSA and regulatory consequences for both "participating" and "nonparticipating" manufacturers).

Over the years GRE has filed many challenges to the MSA and to related statutes that regulate its activities as a nonparticipating manufacturer. *See, e.g.*, *Grand River Enter. Six*

*Nations, Ltd. v. Pryor,* 481 F.3d 60, 62 & n. 1 (2d Cir. 2007) (*per curiam*) (listing lawsuits by GRE). In this action GRE focuses on recent amendments to Conn. Gen. Stat. § 4-28m(a)(3)(C), which applies to nonparticipating manufacturers like GRE.

Section 4-28m(a)(3)(C) provides in relevant part that the Commissioner of Revenue Services may not include or retain on the Tobacco Directory any brand family of a nonparticipating manufacturer if the Commissioner concludes there is an unsatisfactory discrepancy between the reported number of a non-participating manufacturer's cigarettes that have been *sold* nationwide and those that have been *shipped* nationwide. *Ibid.* The statute provides for the measurement of this sales-vs.-shipping discrepancy by reference to cigarette sales as shown on federal excise tax returns and by reference in part to interstate cigarette shipments that are reported under a separate federal statute, known as the Prevent All Cigarette Trafficking Act (the "PACT Act"), 15 U.S.C. § 375 *et seq.*[2]

As Judge Eginton observed in his initial ruling, the "legitimate legislative purpose" for section 4-28m(a)(3)(C) is "to grant state certification only to those manufacturers that can

---

[2] Conn. Gen. Stat. § 4-28m(a)(3)(C) provides as follows:

> The commissioner [of Revenue Services in Connecticut] shall not include or retain in the directory any brand family of a nonparticipating manufacturer if the commissioner concludes … (C) a nonparticipating manufacturer's total nation-wide reported sales of cigarettes on which federal excise tax is paid exceeds the sum of (i) its total interstate sales, as reported under 15 U.S.C. § 375 *et seq.*, as from time to time amended, or those made by its importer, and (ii) its total intrastate sales, by more than two and one-half per cent of its total nation-wide sales during any calendar year, unless the nonparticipating manufacturer cures or satisfactorily explains the discrepancy not later than ten days after receiving notice of the discrepancy.

Although the statute on its face requires a comparison only of cigarette "sales" figures, GRE alleges that the underlying records referenced by the statute reflect "shipment" figures, thus entailing a comparison between sales figures and shipment figures. GRE's second amended complaint alleges that the statute "purport[s] to authorize revocation of Plaintiff's right and license to have its tobacco products sold in Connecticut, if Plaintiff's regulatory filings cannot reconcile the number of products *sold* nationwide by importers of its products (as measured by the importer's national federal excise tax returns) with the number of products *shipped* by these importers throughout the United States in Interstate Commerce (as evidenced federal shipping reports required under federal law)." Doc. #74 at 1 (¶ 2) (emphasis added).

effectively track their cigarette sales, and can demonstrate, through diligent recordkeeping, that the vast majority of their cigarettes are being sold to distributors or retailers that comply with applicable federal and state reporting and taxation requirements." *Grand River Enterprises*, 2018 WL 4623024, at *2. Hence, the statute serves Connecticut's interest in deterring contraband cigarette sales—sales that evade state taxation as well as diminish payments to the escrow fund for any future damages claims.

To verify a nonparticipating manufacturer's certification of compliance pursuant to section 4-28*l*, section 4-28m(a)(3)(C) requires the Commissioner to reach a conclusion about whether there is an unsatisfactory discrepancy between reported sales and shipments. *See* Conn. Gen. Stat. § 4-28m(a)(3)(C), § 4-28*l*(a) & (d)(3) (requiring certification by nonparticipating manufacturer with terms of regulatory statute including section 4-28m). If there is a discrepancy, it is undisputed that the Commissioner may seek additional information from nonparticipating manufacturers such as GRE in order to determine whether any such discrepancy can be satisfactorily explained.

GRE's second amended complaint alleges that section 4-28m(a)(3)(C) violates the Due Process Clause, the Commerce Clause, and the Supremacy Clause. Doc. #74. Judge Eginton rejected all these claims and granted the Commissioner's motion to dismiss. *Grand River Enterprises*, 2018 WL 4623024; Doc. #100.

GRE's motion for reconsideration seeks reconsideration of just two aspects of Judge Eginton's ruling. Doc. #102. First, GRE seeks reconsideration of the dismissal of its Commerce Clause claim insofar as Judge Eginton ruled that the Connecticut law did not improperly regulate extraterritorial conduct. Second, GRE seeks reconsideration of the dismissal of its Supremacy Clause claim, arguing that the prior ruling improperly relied on extrinsic evidence that may not

be considered at the stage of a preliminary motion to dismiss. My ruling here will address only these two reconsideration arguments.

## DISCUSSION

Motions for reconsideration are disfavored unless a party can show that the Court overlooked facts or law in a manner that has led to a clear error or manifest injustice. A motion for reconsideration is not an occasion for a losing party simply to re-litigate arguments that were previously raised and considered by the Court. *See generally Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012); *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995).

*Commerce Clause*

GRE argues that section 4-28m(a)(3)(C) imposes reporting requirements that amount to extraterritorial control over the business activities of GRE and third-party importers of GRE's cigarettes outside of Connecticut. Judge Eginton rejected this argument, and GRE argues that in doing so Judge Eginton misapplied the Second Circuit's decision in *VIZIO, Inc. v. Klee*, 886 F.3d 249 (2d Cir. 2018). In *VIZIO*, the Second Circuit dismissed a Commerce Clause challenge to the manner in which Connecticut calculated the fee to be imposed on certain electronics product manufacturers for the costs incurred by the State to recycle their products. In that case, the Connecticut law based the state fee calculation on each manufacturer's national market share rather than each manufacturer's market share only within Connecticut. The *VIZIO* plaintiff argued that to do so was to directly regulate its out-of-state sales and to control its conduct outside of the state's boundaries, and that the state law affected its out-of-state pricing decisions. *VIZIO*, 886 F.3d at 253. According to the Second Circuit, basing the in-state fee on out-of-state sales did not amount to the regulation of conduct occurring outside Connecticut, because the law

5

"does nothing to *control* interstate commerce, but rather merely *considers* out-of-state activity in imposing in-state charges." *Id.* at 256.

Judge Eginton did not misapply *VIZIO* or otherwise err by relying on *VIZIO*. Although the facts and regulatory framework in *VIZIO* are not the same as those presented here, the reasoning of *VIZIO* applies with equal force in this case. Section 4-28m(a)(3)(C) on its face attaches regulatory significance to activity that has occurred outside of Connecticut but does not go so far as to mandate or control any extraterritorial commercial activity. The most that can be said is that section 4-28m(a)(3)(C) tasks GRE with gathering sales or shipping information from out-of-state importers and distributors of its cigarettes so that GRE in turn may certify its compliance with sections 4-28h to 4-28j, inclusive, and submit the required data, if necessary, for the Connecticut Commissioner to evaluate any discrepancy under section 4-28m(a)(3)(C).

"A state law has unconstitutional extraterritorial effect if its 'practical effect … is to control conduct beyond the boundaries of the State.'" *VIZIO*, 886 F.3d at 255 (quoting *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989)). Thus, for example, "the Commerce Clause dictates that no State may force an out-of-state merchant to seek regulatory approval in one State before undertaking a transaction in another." *Grand River*, 425 F.3d at 170 (quoting *Healy*, 491 U.S. at 337); *see also Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 67 (2d Cir. 2010) (same). On the other hand, "[c]ourts have consistently recognized that '[t]he mere fact that state action may have repercussions beyond state lines is of no judicial significance so long as the action is not within that domain which the Constitution forbids.'" *Ibid.* (quoting *Osborn v. Ozlin*, 310 U.S. 53, 62 (1940)).

Section 4-28m(a)(3)(C) does not control or regulate any of GRE's out-of-state commercial activity. GRE does not point to any precedent to suggest that a State engages in the

"control" of conduct beyond its borders when, as GRE alleges here, the State conditions the right of a business to conduct in-state activity on the business's disclosure and reporting of information concerning its out-of-state activities.

It would not violate the Commerce Clause, for example, if Connecticut demanded that an applicant for a business license disclose whether he had been criminally convicted in California. Nor does it make a difference whether section 4-28m(a)(3)(C) may require a manufacturer to gather information about the sale and shipping of its products from its out-of-state business partners (such as requiring GRE to obtain information from GRE's cigarette importers and distributors). Section 4-28m(a)(3)(C) at most creates repercussions for the out-of-state activities of GRE and its importers but falls well short of actually controlling out-of-state business activity in violation of the Commerce Clause.

Moreover, as both the Second Circuit and Supreme Court have made clear, the "practical effect" of a State regulation "must be evaluated not only by considering the consequences of the statute itself, but also by considering how the challenged statute may interact with the legitimate regulatory regimes of other States and what effect would arise if not one, but many or every, State adopted similar legislation," because "[g]enerally speaking, the Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State." *Grand River*, 425 F.3d at 170 (quoting *Healy*, 491 U.S. at 336-37). Here, because section 4-28m(a)(3)(C) requires the reporting of information that is already independently subject to federal reporting requirements (whether on federal excise tax forms or pursuant to PACT), there can be no plausible claim that section 4-28m(a)(3)(C) amounts to an improper projection of Connecticut's regulatory authority to encroach upon any regulatory interests of other States.

Even taking as true GRE's factual allegations in its second amended complaint, any practical effect on GRE's out-of-state activity is necessarily *de minimis* because the information that section 4-28m(a)(3)(C) requires to be reconciled—nationwide transactions of cigarettes as reported in federal reporting forms and under PACT Act—is based on information that GRE must collect from its importers and distributors as a nonparticipating manufacturer who must comply with Connecticut's escrow statute. *See* Doc. #74 at 20 (¶ 91) (alleging in its second amended complaint that GRE has been threatened with removal from the Tobacco Directory "if GRE fails to report to DRS its total nationwide cigarette sales as reported by GRE's importers in their PACT Act reports and their federal tax return information contained in TBB Form 5220.6").[3]

Indeed, as GRE itself alleges in the complaint, a nonparticipating manufacturer like GRE must make escrow payments to each State, and those escrow payments are based on the number of cigarettes sold within each state. Doc. #74 at 5-6 (¶ 19). If GRE's escrow payments to a certain State exceed what it would pay if GRE were a participating manufacturer under the MSA, then GRE would be entitled to a refund. *Ibid*. (citing Conn. Gen. Stat. §§ 4-28h *et seq*. to describe escrow requirements).[4] Yet the amount that GRE would pay if were a participating

---

[3] Pursuant to the PACT Act, all persons who sell, transfer, or ship cigarettes in interstate commerce for profit must: (1) register with the tobacco tax administrator of the state into which shipment is made and (2) file monthly reports with the tobacco tax administrator. . . identifying the brands, quantities, and recipients of cigarette and smokeless tobacco shipments into such state. 15 U.S.C. §§ 375, *et seq*. Moreover, the Court takes judicial notice that TTB Form 5220.6—which is expressly referenced in GRE's second amended complaint as part of its Commerce Clause claim—is a monthly submission requiring importers to report the number of cigarettes and other tobacco products. *See* Doc. #74 (¶ 91); Alcohol and Tobacco Tax and Trade Bureau, Form 5220.6, U.S. Department of the Treasury, https://www.ttb.gov/resources/publications/forms; *see also* Doc. #74 (¶¶34-36) (describing GRE's submission of the TTB Forms 5220.6 to the Commissioner in response to its request for its reconciliation data under section 4-28m(a)(3)(C)).

[4] *See* Conn. Gen. Stat. § 4-28i(a)(1) ("Any tobacco product manufacturer selling cigarettes to consumers within this state, whether directly or through a distributor, dealer or similar intermediary or intermediaries, after July 1, 2000, shall (A) become a participating manufacturer . . . or (B) place into a qualified escrow fund not later than April fifteenth of the year following the year in question [$.0188482 per unit sold]."); Conn. Gen. Stat. § 4-28i(b)(2) ("[T]o the extent that a tobacco product manufacturer [that places funds into escrow pursuant to subsection (a) of this section] establishes that the amount it was required to place into escrow on account of units sold in this state in a

8

manufacturer under the MSA is determined in part by GRE's *national* market share.[5] In other words, to claim credit for any overpayments to the Connecticut escrow account, GRE would necessarily need to rely on its national market share information.

Thus, as the Commissioner notes, "[a]ll of the sales information that Plaintiff must collect from its importers and distributors regarding either interstate sales or intrastate sales of its brands is data that importers and distributors must already submit to state revenue departments pursuant to either federal law (the PACT Act) or state law." Doc. #95 at 12. In light of this regulatory context, it is impossible to conclude that the practical effect of section 4-28m(c)(3)(A) is an improper control by Connecticut of out-of-state business activities. *See Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 220 (2d Cir. 2004) (rejecting Commerce Clause extraterritoriality challenge to New York State cigarette regulation because "[t]he extraterritorial effect described by appellants amounts to no more than the upstream pricing impact of a state regulation").

GRE further argues that Judge Eginton failed to credit the allegations of the complaint as a court is required to do when evaluating a Rule 12 motion to dismiss. But a court is not required to accept legal conclusions or conclusory factual allegations. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same). Notwithstanding the hyperbole in GRE's complaint about the effect of section 4-28m(a)(3)(C),

---

particular year was greater than the Master Settlement Agreement payments, as determined pursuant to section IX(i) of said agreement including after final determinations of all adjustments, that such manufacturer would have been required to make on account of such units sold had it been a participating manufacturer, the excess shall be released from escrow and revert back to such tobacco product manufacturer. . . .").

[5] *See Freedom Holdings*, 624 F.3d at 67 (noting that "escrow payments are still keyed, in part, to MSA payments, which in turn depend on national market share" but rejecting plaintiffs' Commerce Clause challenge to New York's escrow statute); *KT.& G Corp v. Attorney Gen. of State of Okla.*, 535 F.3d 1114, 1143-46 (10th Cir. 2008) (same).

9

GRE has not alleged facts that give plausible grounds to grant relief in light of the regulatory framework as described above that governs the consideration of its claims.[6]

In short, Judge Eginton correctly concluded that section 4-28m(a)(3)(C) "is merely a reporting requirement pertaining to sales transactions that have already occurred," and "it has no substantive impact whatsoever on those transactions themselves, so the Commissioner cannot be said to have directed plaintiff's out-of-state conduct." *Grand River*, 2018 WL 4623024, at *5. Accordingly, I will deny GRE's motion to reconsider the dismissal of its Commerce Clause claim.

*Supremacy Clause*

GRE next argues that Judge Eginton erroneously relied on extrinsic evidence to dismiss GRE's claim under the Supremacy Clause that section 4-28m(a)(3)(C) is inconsistent with, and thereby preempted by, the PACT Act. GRE points to a sentence in Judge Eginton's ruling in which he noted that GRE itself "has continuously complied with the challenged statute for the past two years, as have the other three similarly situated manufacturers that are listed on the Connecticut Tobacco Directory." *Grand River*, 2018 WL 4623024, at *4. According to GRE, it

---

[6] As the Second Circuit in *VIZIO* explained,
> In *Grand River* [*v. Pryor*], we allowed plaintiffs' extraterritoriality claim to proceed under a national market share theory. [425 F.3d 158, 173 (2d Cir. 2005)]. Unlike the plaintiffs in *Grand River*, however, VIZIO has not made any of the allegations that we suggested in *Grand River* could give rise to a viable claim: "that the [E–Waste Law is] inconsistent with the legitimate regulatory regimes of other states, that the [E–Waste Law] force[s] out-of-state merchants to seek [Connecticut] regulatory approval before undertaking an out-of-state transaction, or that any sort of interstate regulatory gridlock would occur if many or every state adopted similar legislation." *Id*. at 171 (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 221 (2d Cir. 2004)]).

*VIZIO*, 886 F.3d at 257. Like the plaintiff in *VIZIO*, GRE does not plausibly make those allegations—that section 4-28m(a)(3)(C) is inconsistent with the regulatory regimes of other states, that it forces out-of-state merchants to seek Connecticut regulatory approval before undertaking an out-of-state transaction, or that any sort of interstate regulatory gridlock would occur if many or every state adopted similar legislation. *See* Doc. #74 at 1-20 (¶¶ 1-94).

was improper at the preliminary motion-to-dismiss stage of this litigation for Judge Eginton to rely on any fact-based reference to "three similarly situated manufacturers" who are listed on the Tobacco Directory.

I conclude that any error was not material as to whether there is a preemption conflict between section 4-28m(a)(3)(C) and the PACT Act. According to GRE, section 4-28m(a)(3)(C) requires a comparison and reconciliation of out-of-state sales and shipping data, which conflicts with the PACT Act because the PACT Act exempts some of the necessary data (non-interstate sales) from its reporting requirements. Doc. #86 at 33-36. But the fact that Connecticut seeks certain sales and shipping information that goes beyond what the PACT Act otherwise requires to be reported does not mean that the Connecticut law is in *conflict* with the PACT Act, much less that it is impossible to comply with both statutes. Indeed, to the extent that GRE complains that certain data may not be available to submit to Connecticut because it is not required to be reported under the PACT Act, Connecticut's section 4-28m(a)(3)(C) anticipates this concern by allowing GRE to furnish a satisfactory explanation for any discrepancy in the comparison of sales and shipping data. Because GRE has not otherwise alleged facts that plausibly support a preemption conflict between section 4-28m(a)(3)(C) and the PACT Act, any possible error in the initial ruling with respect to reliance on extrinsic evidence does not warrant reconsideration of the dismissal of the Supremacy Clause claim.

## CONCLUSION

For the reasons set forth in this ruling, the Court DENIES plaintiff GRE's motion for reconsideration of the dismissal of its claims under the Commerce Clause and the Supremacy Clause. Doc. #102. Pursuant to Fed. R. Civ. P. 25(d), the Clerk of Court shall amend the official case caption as reflected in the caption above to substitute the Acting Commissioner of Revenue

Services John Biello as the defendant in place of former Commissioner Kevin Sullivan who was initially named as the defendant in this action.

It is so ordered.

Dated this 3rd day of March 2020.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge